In the Matter of Charles R. ANDERSON, Debtor.

MONARCH TILE MANUFACTURING, INC., Plaintiff,

v.

Charles R. ANDERSON, d/b/a Handy Andy, Defendant.

Bankruptcy No. 80–0169.

United States Bankruptcy Court, W. D. Wisconsin.

April 14, 1981.

Michael Nowakowski, Madison, Wis., for Monarch Tile Mfg., Inc., plaintiff.

Charles R. Anderson, d/b/a Handy Andy, defendant, pro se.

ROBERT D. MARTIN, Bankruptcy Judge.

This adversary proceeding came on for trial before me on March 12, 1981. The plaintiff appeared by its attorney, Michael Nowakowski, and the defendant appeared *pro se.* I have reviewed and considered all of the records and files herein and the evidence presented at the trial and make the following:

## FINDINGS OF FACT

1. The plaintiff is a corporation with its principal place of business being 600 South Oakes Street, San Angelo, Texas, with dis-

tribution centers and offices within the State of Wisconsin, and at all times material hereto was engaged in the business of manufacturing and selling tile products.

2. The defendant-debtor is an adult resident of the State of Wisconsin, residing at 2325 Middleton Beach Road, Middleton, Wisconsin.

3. Defendant was a cash customer of plaintiff to whom no credit was ever extended by plaintiff. Defendant's application to plaintiff for credit on account purchases had been refused.

4. Shortly prior to February 28, 1980, the defendant purchased materials from the plaintiff by paying with a check in the amount of $203.65 which was later returned to plaintiff by defendant's bank marked "NSF." That check was the first "NSF" check given to plaintiff by the defendant.

5. On and before February 28, 1980, the defendant placed orders with the plaintiff for certain equipment and materials as described on Invoice Nos. 3335, 3554 and 3422. The defendant picked up the materials described at plaintiff's office and warehouse on February 29, 1980.

6. The defendant paid for the materials picked up on February 29, 1980, and reimbursed plaintiff for the previously returned "NSF" check by giving to the plaintiff a check in the amount of $1,521.15, dated February 29, 1980.

7. The plaintiff knew on February 29, 1980, that he did not have sufficient funds in his account to cover his check, and intended that plaintiff by its employees would rely on the representation of sufficient funds which his payment by check would entail.

8. The defendant did not have sufficient funds on deposit in his account to cover the check at any time after the check was drawn.

9. Plaintiff's employees relied on defendant's check, giving the defendant the materials ordered and the previously returned "NSF" check in exchange therefor.

## DISCUSSION

11 U.S.C. § 523(a)(2)(A) states:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

For a debt to be determined non-dischargeable under 11 U.S.C. § 523(a)(2)(A), the false representation or false pretense must "involve moral turpitude or intentional wrong. The representation must be knowingly and fraudulently made, and they must be relied upon by the other party." *In Re Miller,* 2 C.B.C.2d 849, 851, 5 B.R. 424 (W.D. La.1980). "[T]he party alleging the fraud must prove actual or positive fraud, not merely fraud implied by law." *In Re Taylor,* 514 F.2d 1370, 1373 (9th Cir. 1975). Aid in interpreting the required elements of § 523(a)(2)(A) may be found in case law interpreting § 17a(2) of the Act of 1898 because § 523(a)(2)(A) includes little substantive change. *In Re Miller, supra,* 2 C.B.C.2d 852, 5 B.R. 424.

A debtor's issuing of a check subsequently returned for insufficient funds does not in all circumstances create a debt which is non-dischargeable under § 523(a)(2)(A), *In Re Loudermilk,* 1 B.C.D. 166 (W.D.Pa.1973). However, "the issuance of a check carries an implied representation by the issuer that there are funds available to honor the check when presented and the one who issues the check, knowing that he has no funds to cover the check, is just as guilty of making false representations as one who actually makes such representations expressly, either orally or in writing." *In Re Kurant,* 3 B.C.D. 832, 14 C.B.C. 783 (M.D.Fla.1977). The two elements on which the "NSF" check cases focus are: (1) was there fraud or an intentional wrong by the debtor; and (2) did the debtor obtain money, property, services, or an extension, renewal or refinance of credit because of the

debtor's issuing the check; i. e., did the creditor reasonably rely on the validity of the check?

The standard used to determine whether the fraud or an intentional wrong is of sufficient degree to bar discharge of a debt varies. A finding that "at the time of the issuance of the checks, the bankrupt knew, and the Applicant herein, did not know, that there were not sufficient funds in the bank account for the purpose of honoring those checks upon presentation" was sufficient to meet the fraud or intentional wrong required to bar discharge in *In Re Salvatore Crivello*, 1 B.C.D. 168 (N.J.1974).

Judge David E. Nims, Jr. found the debt created by the issuance of the "NSF" check in a cash sales transaction was fraudulent based on a Michigan criminal statute making an "NSF" check prima facie evidence of intent to defraud. *In Re Lubbers*, 1 B.C.D. 1293, 5 C.B.C. 506 (W.D.Mich.1975). Wis. Stats. § 943.24 is similar to that Michigan statute and states in pertinent part:

943.24 *Issue of worthless check*

(3) Any of the following is prima facie evidence that the person at the time he or she issued the check or other order for the payment of money, intended it should not be paid:

(b) Proof that, at the time of issuance, the person did not have sufficient funds or credit with the drawee and that the person failed within 5 days after receiving notice of nonpayment or dishonor to pay the check or other order; or

(c) Proof that, when presentment was made within a reasonable time, the person did not have sufficient funds or credit with the drawee and the person failed within 5 days after receiving notice of nonpayment or dishonor to pay the check or other order.

The Wisconsin statute has not been relied upon as conclusive. This court considered the issue previously and found in *In Re Walker*, 1 B.C.D. 245 (W.D.Wis.1974), the bankrupt's checks to plaintiff had been dishonored previously, although payment had eventually been made on each of them and therefore held that the plaintiff had "relied on subsequent payment from Walker rather than on the soundness of the checks it received from Mrs. Walker." Judge Bessman stated:

The mere fact that the checks were found worthless does not establish an intent to defraud Midwest.

Colliers supports the view of Judge Bessman arguing that § 523(a)(2)(A) requires a finding of actual fraud other than a statutorily created fraud in order to have the moral turpitude required to bar discharge. 3 Collier on Bankruptcy (15th ed.) ¶ 523.-08(5), page 523–47.

█ Although this court has in *Walker* adopted the higher standard for finding fraud, *Walker* must be distinguished from the present case. In this case the evidence does not support the contention that reliance was placed on either a previous history of making "NSF" checks good or a promise to make the check good prior to presentment at a later date. Absent those special circumstances, there is no basis for rebutting the wrongful intention of the debtor nor the reasonable reliance of the creditor.

## CONCLUSIONS OF LAW

1. This case was timely commenced by plaintiff to determine the dischargeability of the debt created by the "NSF" check pursuant to 11 U.S.C. § 523(a)(2)(A).

2. The issuance of the check in the amount of $1,521.15 on February 29, 1980, in exchange for materials supplied and the previously returned "NSF" check constituted the obtaining of property by false pretenses, false representation, or actual fraud under 11 U.S.C. § 523(a)(2)(A).

3. The plaintiff reasonably relied on the validity of defendant's check in delivering to defendant materials and the previously returned "NSF" check.

4. The debt created by the "NSF" check for $1,521.15 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

IT IS ORDERED THAT JUDGMENT BE ENTERED ACCORDINGLY.